*Palmer v. Furlan*, No. 162-3-17 Wncv (Teachout, J., July 2, 2018).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 162-3-17 Wncv** |

**STEPHAN PALMER**
    **Plaintiff**

    **v.**

**MARK FURLAN and the STATE OF VERMONT**
    **Defendants**

## DECISION
### Mr. Furlan's Motion for Summary Judgment and
### Motion to Strike

Plaintiff Stephan Palmer claims that, while incarcerated, Attorney Mark Furlan was appointed to represent him in a postconviction relief (PCR) case and did so negligently. In this case, he asserts legal malpractice (and gross negligence and willful misconduct) against Mr. Furlan. Mr. Furlan has filed a motion for summary judgment arguing that he is statutorily immune from suit 13 V.S.A. § 5241(b) and that there is no evidentiary basis for any element of a negligence claim.

Attorney Furlan was an ad hoc defender—an independent contractor with the State rather than its employee—when he represented Mr. Palmer in his PCR case. That case was litigated until the parties agreed to settle it and arrived at a proposed stipulation modifying Mr. Palmer's sentence. As framed by Mr. Palmer, the negligence alleged in this case is as follows. Mr. Furlan filed the stipulation with the PCR court in a timely manner. However, the stipulation, on its face, did not make clear that the sentence modification would result in Mr. Palmer's immediate release from prison upon approval by the PCR court and amendment of the mittimus by the criminal court. Not knowing that immediate release was at stake, the civil court took more time than it would have otherwise in scheduling a hearing and approving the stipulation. It did eventually approve the stipulation, the mittimus was altered accordingly, and Mr. Palmer was released. He characterizes the length of incarceration between when he thinks he would have been released if Mr. Furlan had more aggressively attempted to get the PCR court to act fast and when he actually was released as wrongful and the basis for his damages.

*Statutory immunity*

Generally, when a State employee injures persons or property, the exclusive right of action lies "against the state of Vermont; and no such action may be maintained against the employee or the estate of the employee." 12 V.S.A. § 5602; see also 3 V.S.A. § 1101 (defining State employees and describing the State's obligation to defend them). In response to such a suit, the State may assert its sovereign immunity. Thus, one with a claim for negligence against a public defender who is an employee of the State must assert that claim against the State and

can expect the State to assert its sovereign immunity, to the extent available, in response.

In 2015, the legislature adopted 13 V.S.A. § 5241(b):

> In the performance of duties pursuant to a contract with or providing ad hoc legal services to the Office of the Defender General, an attorney shall have the benefit of sovereign immunity to the same extent as an attorney employed by the Defender General.

In the earlier decision dismissing the State from this case, the court ruled that this provision does not operate in the same manner as 12 V.S.A. § 5602. It does not authorize a claim against the State that otherwise would have been brought against the individual. Instead, it permits "[a]d hoc counsel [to] assert sovereign immunity . . . without the necessity of the State being named as a party."[1]

Mr. Furlan argues that 13 V.S.A. § 5241(b), on its face, makes him statutorily immune from suit. This is not the court's interpretation of § 5241(b). The statute permits him to raise sovereign immunity in defense of Mr. Palmer's claim as though he were the State defending against a claim against a State employee. He has not done so. The court will not address the issue of statutory immunity further.

*Negligence*

The court will not dwell on the duty and breach elements of Mr. Palmer's negligence claim. Assuming Mr. Furlan had some obligation to attempt to speed up the PCR court's actions, and he failed to do so, Mr. Palmer's claim nevertheless fails as a matter of law on causation grounds.

Mr. Palmer's principal PCR claim asserted a defect in the plea colloquy, *not a defect in the mittimus itself.* Yet the proposed stipulation agreed to by him and the State in the PCR case, as he describes it, did not set forth an agreed violation of V.R.Cr.P. 11(f) in support of a civil decision vacating the criminal conviction preliminary to a remand to the criminal division for further proceedings in the criminal case. Instead, the parties to the PCR case agreed to *a new sentence* to be entered by the civil court without vacating the criminal conviction at all. Whether a PCR court would assent to stipulated post-conviction relief that is not tethered to the violation of rights asserted, without vacating the defective criminal conviction, and effectively enter a new criminal sentence without any underlying basis for doing so in exchange for dismissal of the PCR suit—if proper at all—at least was intrinsically speculative. Whether the PCR court not only would have done so, but would have done so on any different timeline with notice that it could affect the date of release again is intrinsically speculative.

---

[1] The statute is enigmatic insofar as it purports to be premised on the concept that sovereign immunity protects a state employee. Sovereign immunity protects the State, not its employees. Employees are protected by, among other things, 12 V.S.A. § 5602, and there is no provision in 13 V.S.A. § 5241(b) that operates in the same manner as § 5602. The court's interpretation of the statute is the most sensical it has been able to discern, that the statute allows the ad hoc defender to defend as though it were the State just as the State would if the suit were brought against it due to the tort of a State employee.

The PCR case was not a private suit that the parties were entitled to settle however they wished, and the approval by the PCR court was no ministerial act. The PCR suit sought to upset a final judgment of the criminal court. The PCR court in theory had to determine that there was a lawful basis for vacating that final judgment, and whether it would assent to the relief stipulated to by the parties that would bypass further criminal proceedings. Plaintiff's prediction, and his expert's supposition, that any reasonable trial judge would have advanced the case on the docket in these circumstances (much less approve the stipulation) is simply speculation about how judges make decisions and what decisions they reasonably would have made in these circumstances. Mr. Furlan is entitled to summary judgment on this issue.

Insofar as Mr. Furlan is entitled to summary judgment, his motion to strike is moot.

## ORDER

For the foregoing reasons,

1. Mr. Furlan's motion for summary judgment is *granted*.
2. Mr. Furlan's motion to strike is *moot*.
3. Mr. Furlan's attorney shall prepare a form of judgment.

Dated at Montpelier, Vermont this _____ day of June 2018.

_____
Mary Miles Teachout
Superior Judge

3